**MORRISON FOERSTER**

250 WEST 55TH STREET
NEW YORK
NEW YORK 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG, LONDON, LOS
ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN
DIEGO, SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

September 30, 2025

Writer's Direct Contact
+1 (212) 468-8203
JLevitt@mofo.com

**VIA ECF**
The Honorable Edgardo Ramos
U.S. District Court for the
Southern District of New York

Re:     *CoStar Group, Inc. et al. v. Zillow Group, Inc. et al.* (No. 1:25-cv-06248-ER)

Dear Judge Ramos:

Zillow Group, Inc. and Zillow, Inc. ("Zillow") respectfully request a pre-motion conference on a motion to dismiss CoStar's complaint. CoStar has not pleaded that Zillow's alleged infringement was volitional, a foundational requirement of direct copyright infringement. Nor has it plausibly alleged that Zillow had the practical ability to police the copyright status of images uploaded to its websites or that Zillow derived a direct financial benefit from the alleged infringement, as required for its vicarious infringement claim.

**Case Introduction and Background**

At its core, this case is not about protecting copyright. It is about CoStar's effort to use litigation to stifle competition and innovation. Zillow operates a growing and dynamic rentals platform that helps landlords, brokers, and agents connect with prospective tenants, including by allowing them to upload photographs of their listings. CoStar filed this case because Zillow's success—driven by lawful competition and a superior product—threatens its position as one of the most powerful players in the online residential rental market. Instead of competing on the merits, CoStar seeks to misuse copyright law to reduce choice and harm consumers in the process.

CoStar alleges that Zillow's website includes photographs in which CoStar owns copyrights. (Compl., Dkt. 1, ¶ 9.) CoStar acknowledges that these images are uploaded to Zillow's website by customers; it identifies no other source. (*See id.* ¶ 61.) CoStar alleges that, in some instances, Zillow "curates" the organization of photos or uses photographs for functions such as algorithmic rental estimates or listings of previously-listed properties that have become "unclaimed." (*See id.* ¶¶ 61, 69-72, 89-91.) But CoStar does not allege that these are anything other than automated processes that run across all customer photographs.

The complaint also focuses on the application of a "CoStar watermark" to some photographs CoStar claims to own. (*Id.* ¶¶ 41-46.) It alleges that Zillow does not attempt to identify photographs bearing this watermark (*id.* ¶19) but suggests, incorrectly, that Zillow must do so. *Cf. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89-90 (2d Cir. 2019) ("the

**MORRISON FOERSTER**

Hon. Edgardo Ramos
September 30, 2025
Page 2

DMCA explicitly relieves service providers from having to affirmatively monitor their users for infringement"). Even accepting these allegations, however, CoStar admits that only "about half of the infringing photographs located on Zillow include CoStar's watermark." (Compl. ¶ 77 (emphasis added).) Thus, watermarks are not determinative of copyright status for CoStar.

Notably, CoStar's complaint does not allege that it provided Zillow with notice of the alleged infringement prior to filing suit, including through the well-established process of requesting takedown under the Digital Millennium Copyright Act. This is because it provided no notice.

**CoStar Has Not Pleaded Any Plausible Claim**

***CoStar has not pleaded a claim for direct copyright infringement.*** A claim for direct infringement must show that the defendant volitionally "makes" a copy. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). In assessing the presence of volition, "[t]he pivotal factor in this Circuit for direct liability is initiation of the act of copying rather than . . . creation of the technological structure." *In re AutoHop Litig.*, No. 12 Civ. 4155(LTS)(KNF), 2013 WL 5477495, at *6 (S.D.N.Y. Oct. 1, 2013).

This volitional conduct "prerequisite takes on greater importance in cases involving automated systems, like the Zillow website." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019); *see also Cartoon Network*, 536 F.3d at 131 (noting the "significant difference" between a human who makes a copy and a system "which automatically obeys commands and engages in no volitional conduct"); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (affirming summary judgment against claims premised on user-uploaded CoStar photos).

CoStar has not alleged that Zillow volitionally copied its photographs. It acknowledges that users upload photographs to Zillow's websites. (Compl. ¶ 61.) And it does not allege Zillow's direct involvement in this process. *See Zillow*, 918 F.3d at 732 (no volition absent Zillow exercising control, selecting material, or instigating copying, storage, or distribution).

CoStar instead tries to argue that Zillow takes an "active role" in listings by quoting Zillow as saying that it can rearrange photos based on predictions of what will generate the highest number of contacts. (Compl. ¶ 75.) But CoStar is still unable to point to any action taken directly by Zillow rather than through automated processes. *See White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 461 (S.D.N.Y. 2025) (no volition where "[t]here is nothing in the amended complaint to suggest that these acts were anything other than part of an automated process"). And the rest of Zillow's statement—which CoStar selectively omits—proves the opposite: "For building pages and listings on Zillow and HotPads, we automatically process every photo and our system algorithmically determines which photo will generate the highest number of contacts for your listing as a primary photo." *See* https://help.zillowrentalmanager.com/hc/en-us/articles/217080338-Why-is-my-primary-photo-different (emphasis added).

CoStar's allegations about Zillow processes like population of images into "unclaimed" property listings, algorithmic property value estimates, and sharing property listings with third-party sites fail for the same reason. (*See* Compl. ¶¶ 69-72, 89-91.) CoStar provides no facts plausibly

**MORRISON FOERSTER**

Hon. Edgardo Ramos
September 30, 2025
Page 3

establishing that these processes are volitional, rather than passive systems that run on every photograph uploaded to Zillow by its customers.  "Zillow's behind-the-scenes technical work" and automated processing, as well as its "promotion" of its services, are "at most, passive participation . . . not sufficient to cross the volitional-conduct line."  *Zillow*, 918 F.3d at 738.

Alleging that Zillow "actively monitors" because it screens explicit or discriminatory content fares no better.  (Compl. ¶ 76.)  Briefly screening user-uploaded photos does not establish volition.  *CoStar*, 373 F.3d at 556 (even review for indicia of copyright does not create volition).

***CoStar has not pleaded a claim for vicarious copyright infringement.***  Vicarious infringement requires a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials."  *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (cleaned up).

First, CoStar does not plausibly allege that Zillow had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274 (JLR), 2025 WL 1581258, at *5 (S.D.N.Y. June 4, 2025) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).  A vicarious liability theory does not "fit the Zillow platform," which does not lend itself to sifting for purportedly copyrighted images.  *Zillow*, 918 F.3d at 746 (affirming JNOV of no vicarious infringement).  CoStar's focus on the purported watermarking of its photographs does not change this calculus.  It alleges that only "about half" of the images at issue have a watermark.  (Compl. ¶ 77.)  Even accepting the allegation that CoStar's watermark has some association with a copyright, the status of any given image would be guesswork.  That is not a practical ability to identify infringing images.

Second, CoStar does not plausibly allege a sufficient "causal relationship between the infringing activity and any financial benefit the defendant reaps."  *Gamble v. Tyson*, No. 17-CV-06635(LAK)(SN), 2019 WL 5722129, at *11 (S.D.N.Y. Jan. 4, 2019) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).  CoStar does not allege any direct financial benefit; Zillow does not charge users to upload images and does not sell images.  And there is no indirect causal connection between the infringement and Zillow revenue.  Zillow does not make more money if a listing contains a CoStar photo, and it is not any more likely to draw future customers if a listing contains a CoStar photo.  *See Gamble*, 2019 WL 5722129, at *12 (no vicarious infringement absent showing that, *e.g.*, events using a copyrighted photo drew more ticket sales than those that did not, or that use of the photo resulted in higher speaker fees); *White v. DistroKid*, 738 F. Supp. 3d 387, 402 (S.D.N.Y. 2024) (dismissing vicarious infringement claim where defendant revenues "do not increase or decrease based on whether [a] user uploads infringing or non-infringing products").

Zillow respectfully requests an opportunity to discuss these issues at a pre-motion conference.

**MORRISON FOERSTER**

Hon. Edgardo Ramos
September 30, 2025
Page 4

Respectfully submitted,

*Jamie A. Levitt*

Jamie A. Levitt