Nicholas J. Boyle
Direct Dial: +1.202.637.2339
nicholas.boyle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

October 3, 2025

*Via ECF*

Honorable Edgardo Ramos
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, New York 10007

   Re: *CoStar Group, Inc. et al. v. Zillow Group, Inc. et al.*, 1:25-cv-06248 (S.D.N.Y.)
      Response to Defendants' Request for Pre-Motion Conference Re: Motion to Dismiss

Dear Judge Ramos:

  We represent Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar") in this matter. As previewed below, CoStar intends to oppose Zillow Group, Inc. and Zillow, Inc's (collectively, "Zillow") forthcoming motion to dismiss.

  CoStar brought suit to redress Zillow's mass infringement of CoStar's copyrighted real estate photographs. As set out in the complaint, Zillow is attempting to expand its national online rental listings business, of which New York is the largest market. Dkt. 1 (Compl.) ¶ 53. It is doing so in significant part by infringing CoStar's images—nearly 50,000 as alleged in the complaint, *id.* ¶ 13, and nearly 5,000 more since CoStar filed suit. The images are identified by CoStar's distinctive star watermark, except in a minority of cases where it has been cropped out. *Id.* ¶ 43.

  As Zillow now tells it, Zillow's users, and not Zillow itself, have unlawfully copied and displayed CoStar's images. This is a dramatic distortion of CoStar's complaint. As CoStar alleges, *Zillow* copies and displays CoStar images to build "unclaimed" property pages—*i.e.*, property pages that by definition are not (yet) associated with a user. *Id.* ¶¶ 63, 66. With CoStar's images as a draw, Zillow thereby invites property owners to "claim" a property and purchase rental listing advertisements. *Id.* ¶¶ 63-65. After a user "claims" a property and purchases an ad, Zillow provides the same CoStar images for display in a Zillow.com listing. *Id.* ¶ 68.

  Zillow also sends listings—with CoStar images—to its branded websites, including StreetEasy, a website focused on New York City. *Id.* ¶ 80. And under lucrative syndication agreements, Zillow distributes listings (again with CoStar images) to its partners, Redfin and Realtor.com. *Id.* ¶¶ 81-82. On top of all this, Zillow uses CoStar images to drive core website features: Zillow analyzes real estate photos to provide "Zestimates" of sale and rental values, and extracts image features to analyze user behavior and provide recommendations. *Id.* ¶¶ 88-94.

LATHAM&WATKINS LLP

Zillow's letter ignores many of these key allegations while rewriting others. In truth, CoStar has more than adequately pled Zillow's volitional conduct to support its claim for direct copyright infringement, and, alternatively, the elements of vicarious infringement. All of Zillow's arguments to the contrary rest on factual disputes and mischaracterizations of CoStar's complaint.

**CoStar Has Pled A Claim For Direct Copyright Infringement.** To be liable for direct copyright infringement, the infringer must cause the unlawful copying or display of the plaintiff's works. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 96 (2d Cir. 2016). In an attempt to evade liability, Zillow suggests that all of its actions are "automated" responses to user actions. As an initial matter, an infringer's "automated" actions do not necessarily excuse it from liability; using software to take actions is no silver bullet. *See Williams-Sonoma, Inc. v. Amazon.com, Inc.*, 627 F. Supp. 3d 1072, 1082 (N.D. Cal. 2020) (holding that defendant engaged in volitional conduct using "algorithms" to select photographs); *Cook v. Meta Platforms Inc.*, 2023 WL 6370891, *5 (N.D. Cal. Jan. 4, 2023) (recognizing that "an algorithm designed by a human engineer" can satisfy the volitional conduct requirement). In any case, CoStar does not allege unknowing "automated" conduct, but rather pleads in detail Zillow's wrongful volitional conduct.

CoStar adequately alleges that *Zillow* itself—and not at the prompting of its users—copies and displays CoStar images to build "unclaimed" property pages. Compl. ¶ 63. *Zillow* builds these pages to invite property owners to "claim" the property and sell them listing advertisements. *Id*. ¶ 64. When a property owner purchases a listing advertisement, *Zillow* provides the owner the CoStar photos that *Zillow* copied and displayed. *Id*. ¶ 68. *Zillow* "rearranges the order" of photos to increase the number of users who view them. *Id*. ¶ 75. Then, *Zillow* distributes those photos to its brand websites and syndication partners. *Id*. ¶¶ 80-82. And *Zillow* uses CoStar images to power core website features like Zestimates and user recommendations. *Id*. ¶¶ 88-94.

In taking these actions, Zillow itself causes the copying, display, and distribution of CoStar's images. Under well-settled law, these allegations more than adequately plead Zillow's volitional conduct. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 355 (S.D.N.Y. 2014) (denying a motion to dismiss when "the complaint states that Defendants themselves reproduced the photographs and created thumbnail images"); *Robinson v. Binello*, 771 F. Supp. 3d 1114, 1123 (N.D. Cal. 2025) (denying motion to dismiss where the defendant "selected and exercised control over the content that a third party provided"); *Williams-Sonoma*, 627 F. Supp. 3d at 1082 (denying motion to dismiss where defendant used "algorithms" to "pick[] the most attractive photos"). Zillow bases its misplaced "automation" argument on a case filed against it in 2015. But there Zillow was *found liable* for infringing thousands of real estate photos, and the infringements for which it was not liable were based on a different product and use of photos not at issue here. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 750 (9th Cir. 2019).

**CoStar Has Pled A Claim For Vicarious Infringement.** Vicarious liability arises "when the defendant had [1] the right and ability to supervise [that] [2] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *EMI Christian Music Grp.*, 844 F.3d at 99 (numbering added and internal quotation marks omitted). CoStar's complaint pleads both that Zillow had the right and ability to control the infringement and that it had a direct financial interest in the infringing activity.

LATHAM & WATKINS LLP

A website operator has the "ability to control" infringement when it may "terminate, suspend or restrict" activity on its website. *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009). To have the ability to control infringement, the defendant need not have "actual knowledge" of the infringement. *Rearden, LLC v. Walt Disney Pictures*, __ F.4th __, 2025 WL 2619138, at *7 (9th Cir. Sept. 11, 2025). This is because vicarious infringement is based on agency principles; liability "rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer." *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 384 (S.D.N.Y. 2016).

CoStar has adequately alleged Zillow's ability to supervise the infringing activity. To start, the complaint notes that Zillow reserves the right to remove user-uploaded images for any reason, including image quality, relevance, prohibited content, and copyright infringement. Compl. ¶ 76. Although it could attempt to identify CoStar-owned images by locating CoStar's star watermark or metadata, Zillow chooses not to. *Id*. Zillow also encourages users to upload images, emphasizing that its own "internal data" shows that properties with more images receive more views. *Id*. ¶¶ 35, 74. And Zillow exercises editorial control over images: Zillow "analyzes all listing photos," "predict[s] which images will generate the highest number of contacts," and "rearranges the order" of photos. *Id*. ¶ 75. These allegations are more than enough to plead Zillow's ability to control the infringement. *See BWP Media USA*, 69 F. Supp. 3d at 357 (denying motion to dismiss; "A defendant's ability to block infringers' access to a particular environment for any reason constitutes proof of its right and ability to supervise and control the infringing activities." (citation omitted)).

Trying to raise the pleading bar, Zillow observes that some of the images do not show CoStar's star watermark. But as explained, Zillow's knowledge is not an element of vicarious infringement. *See Rearden*, 2025 WL 2619138, at *7. In any case, Zillow does not dispute that it could detect CoStar's watermark when it has not been cropped out. And Zillow also ignores that other methods (such as metadata review) might reveal CoStar's ownership. Compl. ¶ 76.

As to the financial benefit prong of vicarious infringement, this element is satisfied by a "causal relationship between the infringing activity and any financial benefit the defendant reaps." *BWP Media USA*, 69 F. Supp. 3d at 358 (citation omitted). This causal relationship is present where infringing material acts as a "draw" to attract customers "to a defendant's business, even if it is not the primary, or even a significant draw." *EMI Christian Music*, 844 F.3d at 99. CoStar has pled this element. Zillow uses CoStar images to draw property owners to "unclaimed" property pages and then sells them advertisements. Compl. ¶¶ 16, 64. Professional photography increases listing views, leads, and lease conversions, and Zillow's revenue increases with those metrics as more users visit Zillow.com to view the photos. *Id*. ¶¶ 35, 50. Zillow circulates listing images to affiliate sites and syndication partners, allowing Zillow to expand its rental network. *Id*. ¶¶ 80-82. And, as alleged, Zillow's rentals revenues have increased dramatically in recent quarters at the same time that tens of thousands of CoStar-owned images are appearing on Zillow's website. *Id*. ¶¶ 53-58. These allegations more than suffice. *See BWP Media USA, LLC*, 69 F. Supp. 3d at 358 (denying motion to dismiss where users were drawn to defendant's website by the "display of [the] stolen photographs"); *see also EMI Christian Music*, 844 F.3d at 99 ("An increase in subscribers or customers due to copyright infringement qualifies as an 'obvious and direct financial interest'").

LATHAM&WATKINS LLP

      Respectfully submitted,

      */s/ Nicholas J. Boyle*

      Nicholas J. Boyle
      of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)