UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

COSTAR GROUP, INC., and COSTAR
REALTY INFORMATION, INC.,

                    Plaintiffs,

          v.

ZILLOW GROUP, INC., and ZILLOW,
INC.,

                 Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
X

No. 1:25-cv-06248 (ER)

Hon. Edgardo Ramos

## MEMORANDUM OF LAW IN SUPPORT OF ZILLOW GROUP, INC. AND ZILLOW, INC.'S MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 2

    A.    Defendants Zillow Group, Inc. and Zillow, Inc .......................................... 2

    B.    Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc ...................... 4

    C.    This Litigation ............................................................................................ 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 8

    A.    CoStar Could Have Brought this Case in the Western District of Washington ................................................................................................. 8

    B.    The Balance of Convenience and the Interests of Justice Favor Transfer ............. 8

        1.    The Convenience of Witnesses Favors Transfer ...................................... 8

        2.    The Convenience of the Parties Favors Transfer ................................... 12

        3.    The Location of Documents and Sources of Proof Favors Transfer ....... 14

        4.    The Locus of Operative Facts Favors Transfer ..................................... 14

        5.    Availability of Process Favors Transfer ................................................. 16

        6.    The Relative Means of the Parties Is Neutral ........................................ 16

        7.    CoStar's Choice of Forum Is Not Entitled to Weight ............................ 17

        8.    Forum Familiarity with Law Favors Transfer ....................................... 18

        9.    Trial Efficiency and the Interests of Justice Favor Transfer .................. 19

V.    CONCLUSION ................................................................................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ........................................................................17

*Atl. Marine Constr. Co. v. United States Dist. Ct.*,
  571 U.S. 49 (2013)..............................................................................................14, 18

*In re AutoHop Litig.*,
  No. 12 Civ. 4155(LTS)(KNF), 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013)...........6

*Benson v. Double Down Interactive, LLC*,
  527 F. Supp. 3d 1267 (W.D. Wash. 2021)...........................................................20

*Capitol Recs., LLC v. VideoEgg, Inc.*,
  611 F. Supp. 2d 349 (S.D.N.Y. 2009)................................................................14, 16

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008)...................................................................................6

*Compass, Inc. v. Zillow, Inc.*,
  No. 25-cv-05201-JAV, Dkt. 15................................................................................13

*CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
  150 F.4th 1056 (9th Cir. 2025) ...........................................................................2, 18

*CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
  No. 2:20-CV-08819-CBM-AS (C.D. Cal.) ..........................................................5, 12, 19

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)....................................................................................7

*Dickerson v. Novartis Corp.*,
  315 F.R.D. 18 (S.D.N.Y. 2016) .............................................................................11

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002)....................................................................................10

*Dostana Enters, LLC v. Fed. Express Corp.*,
  No. 00 CIV. 0747 (RWS), 2000 WL 1170134 (S.D.N.Y. Aug. 16, 2000)..................8, 14, 16

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2019)......................................................................................6

*Erickson v. Corinthian Colleges, Inc.*,
No. 13-cv-4308(PKC), 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ....................................17

*Freeplay Music, LLC v. Thermaltake USA, Inc.*,
No. 1:19-CV-1674-GHW, 2019 WL 12375285 (S.D.N.Y. July 9, 2019) .......................11, 12

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................................................................................13

*Gaynor v. Diamond*,
No. 24 CIV. 5690 (KPF), 2025 WL 2256662 (S.D.N.Y. Aug. 7, 2025) ..................................4

*Guardian Life Ins. Co. of Am. v. Coe*,
724 F. Supp. 3d 206 (S.D.N.Y. 2024)....................................................................................16

*H.A.L. NY Holdings, LLC v. Guinan*,
No. 18 Civ. 2275 (ER), 2018 WL 5869648 (S.D.N.Y. Nov. 9, 2018) .............................14, 18

*Harbers v. Eddie Bauer, LLC*,
No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ....................................13

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
419 F. Supp. 2d 395 (S.D.N.Y. 2005)........................................................................7, 19, 20

*Kanbar v. U.S. Healthcare, Inc.*,
715 F. Supp. 602 (S.D.N.Y. 1989) ........................................................................................19

*McGraw-Hill Cos. v. Jones*,
No. 12-CV-7085 (AJN), 2014 WL 988607 (S.D.N.Y. Mar. 12, 2014) .............................14, 15

*NBA Properties, Inc. v. Salvino, Inc.*,
No. 99 Civ. 11799 (AGS), 2000 WL 323257 (S.D.N.Y. Mar. 27, 2000)...............................17

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010).....................................................................................................7

*Nuss v. Guardian Life Ins. Co. of Am.*,
No. 1:20-CV-9189-MKV, 2021 WL 1791593 (S.D.N.Y. May 5, 2021)................................18

*Paysafe Holdings UK Ltd. v. Accruit, LLC*,
No. 18 Civ. 75 (ER), 2019 WL 1115054 (S.D.N.Y. Mar. 11, 2019).............................. *passim*

*Race Safe Sys., Inc. v. Indy Racing League*,
251 F. Supp. 2d 1106 (N.D.N.Y. 2003)..................................................................................10

*Raines v. Switch Mfg. Corp.*,
No. 96 CIV. 2361 (JFK), 1996 WL 413720 (S.D.N.Y. July 24, 1996)...................................19

*Ritchie Capital Mgmt. LLC v. BMO Harris Bank, N.A.*,
  No. 14-cv-1936 (ER), 2015 WL 1433320 (S.D.N.Y. Mar. 30, 2015) ............................7, 8, 10

*Samson Lift Techs. v. Jerr-Dan Corp.*,
  No. 09 CIV. 2493RJH, 2009 WL 2432675 (S.D.N.Y. Aug. 7, 2009) .....................................13

*Schweitzer v. Nevels*,
  669 F. Supp. 3d 242 (S.D.N.Y. 2023)........................................................................................8

*Searle v. Gilead Scis., Inc.*,
  No. 22 CIV. 352 (ER), 2022 WL 294727 (S.D.N.Y. Feb. 1, 2022) ...................................7, 10

*Smith v. Brit. Airways PLC*,
  No. C07-1370MJP, 2008 WL 11343651 (W.D. Wash. June 10, 2008) .................................20

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
  324 F. Supp. 3d 421 (S.D.N.Y. 2018)......................................................................................11

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
  676 F. Supp. 2d 169 (S.D.N.Y. 2009) ......................................................................................13

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ......................................................................................... *passim*

*Volpe v. Am. Language Commc'n Ctr., Inc.*,
  200 F. Supp. 3d 428 (S.D.N.Y. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017).........................4

*X Corp. v. Bright Data Ltd.*,
  733 F. Supp. 3d 832 (N.D. Cal. 2024) .....................................................................................13

## Statutes & Rules

28 U.S.C. § 1400(a) ........................................................................................................................8

28 U.S.C. § 1404(a) .......................................................................................................1, 7, 20, 21

Cartwright Act, Cal. Bus. & Prof. Code §§ 16700–16770. .....................................................2, 18

Fed. R. Civ. P. 45(c)(1).................................................................................................................16

Sherman Antitrust Act, 15 U.S.C. §§ 1–7................................................................................2, 18

## I.    __INTRODUCTION__

This case is not about events that occurred in this District, individuals who live in this District, companies that are based in this District, or any other meaningful local connection. It is a case brought by Virginia-based companies, CoStar Group, Inc. and CoStar Realty Information, Inc. (together, "CoStar"), against Seattle-based companies Zillow Group, Inc. and Zillow, Inc. (together, "Zillow"). It should have been filed in the Western District of Washington in the first instance and should be transferred there now pursuant to 28 U.S.C. § 1404(a).

Zillow was founded over 20 years ago in Seattle, Washington, and remains headquartered there. It offers a variety of online property services, including its well-known marketplace of "for sale" properties. This case specifically relates to Zillow's marketplace for residential rental properties, which Zillow has spent years developing from its home base in Seattle. Zillow's rental marketplace allows property managers, landlords, agents, and brokers to list residential rental properties and allows prospective tenants to browse for properties to rent. As a part of the ordinary process of creating a listing, users upload photos of their properties. When they do so, they grant Zillow a license to those photos and confirm that they have the rights to grant that license.

CoStar is a market dominant real estate information company headquartered in Arlington, Virginia. CoStar also owns the online rental property brand Apartments.com, which it absorbed through a 2014 acquisition. CoStar alleges that a subset of the rental listings on Zillow's websites contain photos in which it owns copyrights. CoStar could have brought this allegation to Zillow's attention pursuant to Zillow's Digital Millennium Copyright Act (DMCA) policy. Zillow would have simply taken down the challenged images, consistent with the DMCA's direction that service providers have no affirmative obligation to monitor for infringement but should expeditiously take down infringing content upon notice. Indeed, Zillow has taken down

the images identified in the exhibits to the Complaint.

But CoStar instead chose to burden Zillow and the judicial system by filing this lawsuit in a forum that is inconvenient to both parties, already congested with other cases, and conspicuously outside of the Ninth Circuit, where CoStar has faced a series of unfavorable decisions. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 747 (9th Cir. 2019) (rejecting broad copyright liability theories brought by VHT—now owned by CoStar—pertaining to Zillow's display of real estate photographs); *see also CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.* ("CREXi"), 150 F.4th 1056, 1075 (9th Cir. 2025) (requiring CoStar to face antitrust counterclaims in a photo copyright case, including allegations that CoStar's restrictions on photo distribution violate the Sherman Act and California Cartwright Act).

Nothing would have prevented CoStar from filing this case in the Western District of Washington, and the convenience of the parties and the interests of justice clearly and convincingly favor transfer there. The center of gravity of CoStar's allegations is in the Seattle area, where Zillow is based, most likely witnesses live, and which is the nexus for the development of the services at issue. Judicial efficiency also favors transfer to the less-congested Western District of Washington, where the average judge's case load is around one-third that of this Court. Moreover, Washington has the far greater interest in regulating the conduct of a Washington-based company and providing a forum for this dispute. For these reasons, and the ones discussed below, Zillow respectfully requests that this matter be transferred to the Western District of Washington.

## II.    STATEMENT OF FACTS

### A.    Defendants Zillow Group, Inc. and Zillow, Inc.

Zillow Group was founded in Seattle in 2004. (Declaration of Erica Rasmussen submitted herewith ("Rasmussen Decl.") ¶ 3.) Defendant Zillow Group, Inc. is the ultimate parent entity of

Zillow and is a publicly traded corporation based in Seattle and incorporated in Washington. (*Id.*) Defendant Zillow, Inc. is an indirect subsidiary of Zillow Group, Inc., and is also based in Seattle and incorporated in Washington. (*Id.*) The corporate headquarters for both defendants is Seattle, Washington. (*Id.*)

Zillow operates a real estate marketplace for renters and property managers across the United States, including Zillow.com, Trulia, HotPads, and other affiliated platforms. (Rasmussen Decl. ¶ 4.) These platforms contain a substantial majority of Zillow's total rental listings. (*Id.*) As discussed in detail below, nearly all the likely Zillow witnesses for the relevant features of these rental websites are in the Seattle area, with two others on the West Coast. Moreover, Zillow's workforce generally reflects that the relevant location for its business operations is in the Western District of Washington. While Zillow offers many of its employees the ability to work remotely, the Western District of Washington is still the home for the greatest percentage of Zillow employees, followed closely by California. (*Id.* ¶ 5.) Less than 2% of Zillow employees reside in the Southern District of New York, and less than 5% of Zillow employees reside anywhere in New York State. (*Id.*)

Zillow also operates StreetEasy, which is a discrete business unit within Zillow that operates a website for properties in New York City and nearby New Jersey as well as a website called Out East for properties in the Hamptons. (*Id.* ¶ 6.) CoStar's complaint does not identify any images hosted on the Out East website. And StreetEasy's website operates differently than the broader Zillow rental websites and does not have the features that CoStar claims are key to its theory of copyright infringement. StreetEasy does not, for example, contain "unclaimed" property pages that allow property owners to submit "claim this property" inquiries. (*Id.*) It does not contain estimated rental values (e.g., "Zestimates") associated with property photographs.

(*Id.*) It does not algorithmically sort user property photographs. (*Id.*) Nor does CoStar's complaint allege that StreetEasy has these features, referring obliquely to "Zillow" in its allegations. In short, CoStar identifies no alleged infringement issues that are unique to StreetEasy and focuses on features that StreetEasy does not have.

       **B.**      **Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc.**

CoStar Group, Inc. and CoStar Realty Information, Inc. are Delaware corporations with a principal place of business in Arlington, Virginia. (Compl. ¶¶ 26–27). CoStar also operates the sub-brand Apartments.com, a large residential rental marketplace that competes with Zillow's rental marketplace offerings. CoStar claims to control the world's largest real estate image library (Compl. ¶ 6), and further claims that it permits use of these images with its services. (*Id.* ¶ 38.) Yet, according to CoStar's allegations, if its rental customers upload these images of their properties to Zillow or other competing platforms, they are committing copyright infringement. (*Id.* ¶¶ 38–39, 61, 116.)

CoStar's complaint does not identify witnesses affiliated with CoStar in the Southern District of New York, nor does its response to Zillow's pre-motion letter. (*See* Dkt. 33.) And it seems unlikely that a meaningful number of CoStar witnesses could be based in this District; based on LinkedIn data, just 4% of CoStar's U.S. employees are in the "New York City Metropolitan Area" (Declaration of John Lanham submitted herewith ("Lanham Decl.") ¶ 2), 46.7% are in the Virginia and Washington D.C.-Baltimore area, with another 18% in California. (*Id.*) CoStar has offices in both Seattle and New York City. (*Id.*)[1]

---

[1] This motion refers to content from public websites, litigation in other districts, and publicly available statistics regarding the dockets of the Southern District of New York and the Western District of Washington. The Court may take judicial notice of this information. *Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428, 430 (S.D.N.Y. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017) (judicial notice of websites); *Gaynor v. Diamond*, No. 24 CIV. 5690 (KPF), 2025 WL 2256662, at *2 n.2 (S.D.N.Y. Aug. 7, 2025) (judicial notice of public facts).

C.    __This Litigation__

This case is part of CoStar's broader playbook of deploying copyright lawsuits to attack its competitors—lawsuits that are typically accompanied by serial press releases from CoStar's Washington, D.C.-based CEO that seek to extol CoStar and demean its competitors.[2] CoStar has filed these lawsuits across the country, but not previously in this District, and is currently litigating one such suit against a competitor in the Central District of California. *See CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, No. 2:20-CV-08819-CBM-AS (C.D. Cal.).

CoStar's complaint alleges that roughly 47,000 of its copyrighted photographs have appeared on Zillow websites. (Compl. ¶¶ 2, 13.) CoStar identifies no source for these photos other than user uploads. (Compl. ¶ 40.) Based on CoStar's exhibits to the complaint, the photographs at issue correspond to 5,598 rental listing addresses. (Lanham Decl. ¶ 4.) As Zillow has well over 2,000,000 rental unit listings (Rasmussen Decl. ¶ 4), CoStar's allegations pertain to a small fraction—less than 0.3%—of Zillow listings. And while CoStar attempts to emphasize the New York rental market as relevant to this case, only about 0.84% of the property addresses identified in its complaint are within the Southern District of New York. (Lanham Decl. ¶ 5.) That means less than 0.00235% of Zillow's total rental listings are both identified by CoStar in its complaint as having copyrighted CoStar images and are located within the Southern District of New York.

Foundational copyright law provides that Zillow is not liable for direct infringement unless it acted with "volition" relating to the allegedly infringing acts and further provides that internet service providers like Zillow have no affirmative duty to monitor users for infringement.

---

[2] *See, e.g.*, https://www.onlinemarketplaces.com/articles/costar-group-ceo-andy-florance-on-zillow-ma-and-domains-key-lime-pie-problem/ (last visited Nov. 3, 2025) (CoStar CEO discussing his press release strategy for this case).

*See, e.g.*, *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008);

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89–90 (2d Cir. 2019). CoStar

tries to get around this law by focusing its complaint on Zillow's behind-the-scenes, automated

website processes: (i) "unclaimed property" pages (Compl. ¶¶ 63–71); (ii) algorithmic reordering

of photos on active listings (Compl. ¶¶ 74–75); (iii) algorithmic "Zestimate" valuations (*id.* ¶¶

89–91); and (iv) the distribution of listings to Redfin and Realtor.com. (*id.* ¶¶ 81–84.) CoStar's

theories will fail as a matter of law, because they rely on automated framework that runs across

millions of user-provided photographs. *See, e.g.*, *Cartoon Network*, 536 F.3d at 131 (noting the

"significant difference" between a human who makes a copy and a system "which automatically

obeys commands and engages in no volitional conduct"); *VHT, Inc. v. Zillow Grp., Inc.*, 918

F.3d 723, 738 (9th Cir. 2019) (Zillow's automated processing of photos is not volitional

conduct); *In re AutoHop Litig.*, No. 12 Civ. 4155(LTS)(KNF), 2013 WL 5477495, at *6

(S.D.N.Y. Oct. 1, 2013) ("[t]he pivotal factor in this Circuit for direct liability is initiation of the

act of copying rather than . . . creation of the technological structure").

      But the merits of this case are more appropriately decided elsewhere, as none of the

functionalities identified in CoStar's allegations—or any other aspect of this case—have a

meaningful connection with the Southern District of New York. The forum with the greatest

connection to this activity is the Western District of Washington. The Seattle area has the

greatest concentration of individuals who would testify about these technological structures. (*See*

Rasmussen Decl. ¶ 5.) The Seattle area has the greatest concentration of individuals who are

responsible for Zillow's relevant business strategy. (*See id.*) And, as the home of Zillow, it is the

center of the benefits alleged by CoStar.

## III.    LEGAL STANDARD

      "[M]otions for transfer lie within the broad discretion of the district court and are

determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). The party requesting transfer "carries the burden of making out a strong case for transfer," which courts in this District have construed as requiring a clear and convincing showing. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (cleaned up).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In applying this provision, courts apply a two-step inquiry: (1) whether the action could have been brought in the proposed transferee forum; and (2) whether the balance of convenience and the interests of justice favor transfer. *Paysafe Holdings UK Ltd. v. Accruit, LLC*, No. 18 Civ. 75 (ER), 2019 WL 1115054, at *8 (S.D.N.Y. Mar. 11, 2019). "The purpose of this provision is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Searle v. Gilead Scis., Inc.*, No. 22 CIV. 352 (ER), 2022 WL 294727, at *1 (S.D.N.Y. Feb. 1, 2022) (cleaned up).

To determine whether the balance of convenience and the interests of justice favor transfer, courts weigh multiple discretionary factors including: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of documents and ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice. *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005); *Ritchie Capital Mgmt. LLC v. BMO Harris Bank, N.A.*, No. 14-cv-1936 (ER), 2015 WL 1433320, at *7

(S.D.N.Y. Mar. 30, 2015); *Schweitzer v. Nevels*, 669 F. Supp. 3d 242, 249 (S.D.N.Y. 2023).

## IV.    ARGUMENT

### A.    CoStar Could Have Brought this Case in the Western District of Washington

CoStar could have filed in the Western District of Washington. Venue in a copyright case is proper in any district where the "defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Both Zillow defendants are incorporated in Washington and maintain their principal place of business and corporate headquarters in Seattle, making the Western District of Washington a proper venue.

### B.    The Balance of Convenience and the Interests of Justice Favor Transfer

#### 1.    The Convenience of Witnesses Favors Transfer

The convenience of witnesses is a key factor in the transfer analysis and is often considered the single most important factor. *See Paysafe*, 2019 WL 1115054, at *5; *Dostana Enters, LLC v. Fed. Express Corp.*, No. 00 CIV. 0747 (RWS), 2000 WL 1170134, at *3 (S.D.N.Y. Aug. 16, 2000). The convenience of both party witnesses and non-party witnesses should be considered. *Paysafe*, 2019 WL 1115054, at *5; *Dostana*, 2000 WL 1170134, at *3. Courts sometimes require a party seeking transfer to identify expected witnesses and the subject matter of their testimony, although this Court has observed that this showing "is required only when the movant seeks a transfer *solely* on account of the convenience of the witnesses." *Ritchie*, 2015 WL 1433320, at *7 n.7.

Zillow's business is concentrated in Seattle, and the witnesses most likely to be called in this case—including those involved in "unclaimed property" listings, algorithmic processing, photo ingestion, systems engineering, sales, customer support, distribution agreements, and artificial intelligence systems such as the Zestimate—are overwhelmingly based in Seattle, with one in each of Oregon and Northern California. Specifically, and without conceding the

relevance or merit of CoStar's allegations, Zillow anticipates the following witnesses have

knowledge relating to the subject matter of CoStar's complaint:

·   Erica Rasmussen, Zillow Senior Product Manager: Knowledgeable
    regarding product operations oversight for rental listings technology and
    aspects of off-market listing pages (what CoStar calls "unclaimed
    property" pages) on the Zillow website. Resident of Seattle, Washington.

·   Josh Weisberg, Zillow Senior Vice President, AI: Knowledgeable
    regarding Zillow's artificial intelligence-based functionality. Resident of
    the greater Seattle area, Washington.

·   Jami Thomas, Zillow Vice President of Sales, Rentals: Knowledgeable
    regarding rentals sales and Zillow's relationships with Realtor.com and
    Redfin. Resident of the greater Seattle area, Washington.

·   Shain Jordan, Zillow Senior Director, Rental Sales: Knowledgeable
    regarding rentals sales and Zillow's relationships with Realtor.com and
    Redfin. Resident of Seattle, Washington.

·   Kathleen Berroth, Zillow Vice President, Strategic Operations and
    Partnerships: Knowledgeable regarding Zillow's relationships with
    Realtor.com and Redfin. Resident of Portland, Oregon.

·   Austin Lively, Zillow Team Manager: Knowledgeable regarding Zillow's
    takedown processes for allegedly third-party copyrighted content.
    Resident of the greater Seattle area, Washington.

·   David Peters, Zillow VP Engineering: Knowledgeable regarding
    engineering of Zillow rental websites. Resident of San Francisco,
    California.

·   Katy McMullan, Zillow Manager Rentals Enterprise Support:
    Knowledgeable regarding onboarding of new listing information. Resident
    of the greater Seattle area, Washington.

·   Marcela Noel, Zillow Manager Rentals Enterprise Support:
    Knowledgeable regarding onboarding of new listing information. Resident
    of the greater Seattle area, Washington.

·   Brian Rossman, Zillow Director of Strategic Finance: Knowledgeable
    regarding Zillow rentals' financials. Resident of greater Seattle area,

Washington.[3]

To the extent there will be other Zillow witnesses in the future, they will most likely be from within the Western District of Washington because more Zillow employees live there than anywhere else. (*See* Rasmussen Decl. ¶ 5.) Only a tiny fraction, 2%, of Zillow employees live in the Southern District of New York, with only 5% anywhere in New York State. (*Id.*)

Requiring Zillow to defend this case in this District would therefore impose substantial inconvenience on the executives, engineers, and other employees who are likely to testify in this action. *See Searle*, 2022 WL 294727, at *2 (granting transfer to California where the "majority" of defendant's employees who may be called as witnesses resided there); *Ritchie Capital Mgmt.*, 2015 WL 1433320, *7 ("Midwest-based" witnesses favored transfer to D. Minn.). The fact that video depositions of witnesses could be taken outside this District (as they could in any other case) does not minimize the importance of this factor given the "general preference for live testimony . . . and the number of witnesses for whom these accommodations would have to be made." *Paysafe*, 2019 WL 1115054, at *6 (quoting *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002)) (cleaned up).

CoStar's pre-motion letter incorrectly asserts that inconvenience to Zillow's employees is of "minimal relevance," citing an out-of-district case. (Dkt. 33 at 2–3 (citing *Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003)).) CoStar omits that the cited portion of *Race Safe* is discussing the availability of process to compel attendance, *see* 251 F. Supp. 2d at 1111, and further omits that *Race Safe* was decided prior to the 2013 Federal Rules amendment that narrowed courts' authority to issue subpoenas for testimony beyond a 100-mile radius. Moreover, this Court has expressly rejected CoStar's position: "consideration of

---

[3] Zillow anticipates that these are the Zillow-affiliated individuals that it would identify in its Rule 26 Initial Disclosures.

*all* Defendants' witnesses, whether party or non-party, is appropriate when weighing the balance of convenience vis-à-vis the parties." *Paysafe*, 2019 WL 1115054, at *6 (emphasis added). This Court has likewise rejected CoStar's suggestion that New York travel for business meetings informs the question of whether New York travel would be "inconvenient *for litigation purposes*." *Id.*; *compare* Dkt. 33 at 3.

CoStar has not identified any of its own witnesses who reside in the Southern District of New York, either in its complaint or its pre-motion submission, and Zillow is not currently aware of any. CoStar appears to have few employees in this District, with nearly half of its staff in the greater D.C. area. (*See* Lanham Decl. ¶ 2.) CoStar has identified a Zillow marketing executive who resides in New York, and who CoStar argues will have relevant knowledge. (*See* Dkt. 33 at 2.) Given this case's probable focus on whether Zillow's automated technical framework gives rise to volition or an ability to control users, product marketing is unlikely to be of serious importance. *See Freeplay Music, LLC v. Thermaltake USA, Inc.*, No. 1:19-CV-1674-GHW, 2019 WL 12375285, at *3 (S.D.N.Y. July 9, 2019) ("the key witnesses in copyright infringement cases are those who are knowledgeable about the design, production, operation, and launch of the allegedly infringing products").

But even crediting CoStar's argument that it plans to seek this individual's testimony, the qualitatively more important testimony and the quantitative number of inconvenienced witnesses plainly favors transfer. *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 439 (S.D.N.Y. 2018)) (noting that courts "consider not only the quantity of witnesses residing in or around a certain forum, but also their quality," and holding that the convenience of some witnesses was outweighed by the greater importance of others located elsewhere); *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016) ("Evaluating both the number of witnesses

that would be inconvenienced and the materiality of the anticipated testimony, as well as the availability of process to compel testimony, the Court finds that these factors weigh in favor of transfer.").

This factor strongly favors transfer.

### 2.    The Convenience of the Parties Favors Transfer

The convenience of the parties weighs in favor of transfer for substantially the same reasons why convenience of the witnesses weighs in favor of transfer: Zillow has long been based in Washington. Its corporate headquarters and home office are in Seattle, Washington. (Rasmussen Decl. ¶ 3.) Seattle has more individuals involved in Zillow website development and individuals responsible for relevant business strategy, including corporate leadership, engineers, product managers, and other key employees as compared to any other region. (*Id.* ¶ 5.) Any witnesses or support staff who must travel could make use of Zillow's Seattle home office. *See Freeplay Music*, 2019 WL 12375285, at *4.

CoStar has no meaningful ties to this District as a Delaware corporation headquartered in Virginia. (Compl. ¶¶ 26–29). Because neither party is based in New York, and neither conducts the core business activities relevant to this case in this District, the convenience of the parties points to Washington, the one forum where a party is truly at home, and where CoStar maintains an office. As part of CoStar's playbook of using copyright litigation as a business cudgel, CoStar has chosen to litigate cases across the country and specifically in the Ninth Circuit before, including the currently pending litigation against CREXi in which CoStar asserts infringement of its photographs on a competitor's online real estate marketplace. *See CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, No. 2:20-CV-08819-CBM-AS (C.D. Cal.). CoStar has demonstrated its willingness and ability to litigate copyright cases nationwide.

Importantly, transfer would not merely "shift" convenience from one party to another, as

CoStar has suggested. (*See* Dkt. 33 at 2 (*citing TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 175 (S.D.N.Y. 2009).) Because neither party has relevant and meaningful connections to the Southern District of New York, it is not a convenient forum to *either* party, unlike in *TouchTunes* where the plaintiff was headquartered in New York City. *See Samson Lift Techs. v. Jerr-Dan Corp.*, No. 09 CIV. 2493RJH, 2009 WL 2432675, at \*3 (S.D.N.Y. Aug. 7, 2009) ("Transferring the present case to Pennsylvania would cut down on substantial inconvenience imposed on the defendants, while not materially disadvantaging plaintiff who has to travel from Florida in any case.").

Nor does the fact that Zillow is currently a defendant in another case in this District mean that this is a convenient forum. (*Compare* Dkt. 33 at 3.) To the contrary, Zillow did not choose the venue in that case and has already been significantly inconvenienced by hearing attendance and other New York based requirements of litigating it. And that case involves different theories of liability and different facts. *See Samson Lift Techs.*, 2009 WL 2432675, at \*3 (1404(a) factors should be decided on a case-by-case basis). For example, unlike this case, the plaintiff in the other litigation has a principal place of business in Manhattan, which significantly impacts the calculus of a motion to transfer. *See Compass, Inc. v. Zillow, Inc.*, No. 25-cv-05201-JAV, Dkt. 15 ¶ 12 (S.D.N.Y. June 24, 2025).[4]

---

[4] Finally, CoStar is bound by Zillow's Terms of Use, which provide for exclusive venue in Washington, and apply to "all disputes, claims, and actions arising from or in connection with the Services." (Rasmussen Decl. Ex. 1, § 17.) These Terms of Use are linked on almost every Zillow web page and apply to any use of Zillow's websites. (*Id.* § 2; Rasmussen Decl. ¶ 7.) As a sophisticated party that routinely used and monitored Zillow's websites, CoStar is bound by these terms. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836–37 (S.D.N.Y. 2012); *Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at \*6–8 (W.D. Wash. Nov. 19, 2019); *X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 847 (N.D. Cal. 2024). This action arises from and connects to Zillow's websites. (*See, e.g.*, Compl. ¶¶ 3, 9, 18–19, 60, 69, 80.) The forum selection clause in the Terms of Use applies and, as relevant to this motion to transfer, bars CoStar from challenging the Western District of Washington as inconvenient and overrides

This factor strongly favors transfer.

### 3.    The Location of Documents and Sources of Proof Favors Transfer

The location of documents and other evidence is ordinarily given less weight, in view of the availability of electronic documents and modern shipping and copying services, although in infringement cases courts recognize that this factor can shift in favor of where a defendant's documents are kept. *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009).

This factor, although not entitled to great weight, is neutral to slightly in favor of transfer.

### 4.    The Locus of Operative Facts Favors Transfer

The locus of operative facts is an important consideration in the venue transfer analysis. "Indeed, it has been observed that where there is no material connection between this district and the operative facts . . . the interests of justice *require* the transfer of the action." *Dostana*, 2000 WL 1170134, at *4 (cleaned up) (emphasis added). "The operative facts in infringement cases usually relate to the design, development and production of an infringing product." *Capitol Recs.*, 611 F. Supp. 2d at 367 (transferring case to venue where website was developed) (citation omitted); *see also Paysafe*, 2019 WL 1115054, at *7 ("it makes sense to construe the operative facts as arising where the decisions to develop and use that trademark were made"); *McGraw-Hill Cos. v. Jones*, No. 12-CV-7085 (AJN), 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) (transferring case to where alleged infringing operation was based).

As discussed above, CoStar's lawsuit challenges Zillow's alleged ingestion and hosting of photographs in its databases, "unclaimed property" pages, algorithms and website features,

---

CoStar's choice of forum. *See H.A.L. NY Holdings, LLC v. Guinan*, No. 18 Civ. 2275 (ER), 2018 WL 5869648, at *2–3 (S.D.N.Y. Nov. 9, 2018) (*citing Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 51 (2013)).

and distribution to Redfin and Realtor.com. (Compl. ¶¶ 19, 63–71, 82–84, 89–91.) The engineering and development of the Zillow, Trulia, and Hotpads websites did not take place in New York. (*See* Rasmussen Decl. ¶ 4.) StreetEasy, the New York-specific Zillow rental marketplace, does not even offer off-market ("unclaimed") listings that allow property owners to submit a "claim this property" inquiry to sales, estimated (e.g., "Zestimate") rental values associated with property photographs; or automated reordering of the property photographs in a listing. (*See id.* ¶ 6.) Rather, the venue with the closest connection to the operative facts is the Western District of Washington. (*See id.* ¶ 5; *see also* Rasmussen Decl. Ex. 1, Zillow Terms of Use, § 17 ("The Zillow Companies operate the Services from our offices in Washington").)

Moreover, CoStar alleges that Zillow has infringed its copyrights nationwide, not just in New York. *See McGraw-Hill*, 2014 WL 988607, *6 (where infringement took place in districts nationwide, the location of infringing sales for placing venue should be treated with skepticism). And early analysis shows that just 47 of the property addresses alleged in the complaint—0.84% of the total addresses identified in the complaint and 0.00235% of the total rental listings on Zillow—are located in the Southern District of New York, compellingly showing that this District has no conspicuous tie to the alleged infringement based on the number of listings there. (Lanham Decl. ¶ 5.)

CoStar's pre-motion letter focuses on the value of the New York real estate market and the claim that 8.8% of the property addresses at issue are within 100 miles of this District. (*See* Dkt. 33 at 1–2.) This reflects nothing more than the fact that New York is the country's largest city by population and at the center of the country's largest metropolitan region, with CoStar's sweeping 100-mile radius extending from Philadelphia to New Haven. It has nothing to do with the *operative* facts of this case, which are CoStar's allegations that Zillow directly or vicariously

infringed its copyrights through Zillow's websites. *See Capitol Recs.*, 611 F. Supp. 2d at 368 (emphasizing that operative facts are design, development, and production, not widespread dissemination). And facts related to connections that are nearby, but out of the District, are not compelling. *See Dostana*, 2000 WL 1170134, at *5 (rejecting argument that dispute was connected to S.D.N.Y. because plaintiff's headquarters were a "short drive" away in New Jersey).

This factor strongly favors transfer.

### 5.    Availability of Process Favors Transfer

The Western District of Washington is better positioned to compel testimony from non-parties previously associated with Zillow. District courts may only compel attendance of a non-party witness by subpoena within 100 miles of where the witness resides, is employed, or regularly transacts business in person or, if certain exceptions apply, within the state where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1); *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 215 (S.D.N.Y. 2024) (residence of key witnesses in Florida and outside the subpoena power of the Southern District of New York favored transfer). Given its workforce demographics, Zillow expects that extremely few former employees live in this District but that many remain in the Western District of Washington. Meanwhile, very few former CoStar employees are likely to live in this District, and presumably most are in the D.C. area, which is outside the subpoena radius of both the Southern District of New York and the Western District of Washington.

This factor favors transfer.

### 6.    The Relative Means of the Parties Is Neutral

The relative means of the parties is neutral. "Although courts can consider the relative means of parties, this factor is not entitled to great weight where, as here, plaintiff[s] and

defendant[s] are both corporations." *NBA Properties, Inc. v. Salvino, Inc.*, No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *10 (S.D.N.Y. Mar. 27, 2000) (cleaned up, citations omitted).

### 7.    CoStar's Choice of Forum Is Not Entitled to Weight

A plaintiff's choice of forum is entitled to minimal weight where (1) the forum is neither plaintiff's home nor where the cause of action arose or (2) the choice of forum is tactical. *Paysafe*, 2019 WL 1115054, at *6; *Erickson v. Corinthian Colleges, Inc.*, No. 13-cv-4308(PKC), 2013 WL 5493162, at *2–3 (S.D.N.Y. Oct. 1, 2013); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994).

This District is indisputably not CoStar's home. Nor, as discussed above in Section IV.B.4, is it where CoStar's causes of action arose or is it otherwise materially connected to this case. This District is, however, a conspicuously tactical choice by CoStar. It is an inconvenient forum for Zillow, which will drive up its litigation costs and burden its witnesses. And it allows CoStar to avoid litigating in the Ninth Circuit, which has issued unfavorable decisions against CoStar and its acquired company VHT Studios.

For example, in 2015, a real estate photography studio, VHT Inc. (now owned by CoStar), brought copyright infringement claims against Zillow. A jury awarded VHT damages, but the Ninth Circuit rejected the vast bulk of VHT's infringement theory and held that Zillow did not directly infringe over 54,000 photos that appeared on Zillow's platform. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732–34 (9th Cir. 2019). As the Ninth Circuit explained, those photos were uploaded automatically by third parties and managed through Zillow's automated systems, meaning Zillow did not engage in the "volitional conduct" required for direct infringement. *Id.* at 734. As to much smaller subset of 3,921 "Digs" photos, the court rejected Zillow's fair use defense where Zillow human moderators had actively selected and tagged this limited set of photos for searchable display—a circumstance involving manual tagging not

-17-

alleged by CoStar. *Id.* The *VHT* decision thus undermines CoStar's position, and it does so through a case brought by a CoStar family company against the same defendant in this case.

Further, in *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, decided shortly before CoStar filed this case, the Ninth Circuit ruled that CoStar must face antitrust counterclaims in a copyright lawsuit that it brought, including allegations that CoStar's conduct in restricting photograph distribution violates the Sherman Act and the California Cartwright Act. 150 F.4th 1056, 1075 (9th Cir. 2025).

It is hardly surprising that CoStar wishes to avoid the Ninth Circuit. But courts do not reward forum shopping, and CoStar's tactical choice of forum should be given little, if any, weight. *See Nuss v. Guardian Life Ins. Co. of Am.*, No. 1:20-CV-9189-MKV, 2021 WL 1791593, at *4 (S.D.N.Y. May 5, 2021) ("[I]t is apparent that in selecting this District, Plaintiff was forum shopping to capitalize on Second Circuit precedents that Plaintiff apparently prefers…. This District has no connection to Plaintiff or the underlying facts and is not more convenient to Plaintiff than her home state forum…").

Moreover, the Court need not give significant weight to CoStar's choice of forum because, as discussed above in Section IV.B.2, Zillow's Terms of Use bind CoStar, as a user of Zillow's platforms, and provide for exclusive venue in Washington courts. *See H.A.L.*, 2018 WL 5869648, at *2–3 (citing *Atl. Marine Constr.* 571 U.S. 49, 51) (forum selection clauses eliminate the plaintiff's forum preference).

This factor is not entitled to weight.

### 8.    Forum Familiarity with Law Favors Transfer

The Southern District of New York and the Western District of Washington are both well equipped to apply federal copyright law. Ninth Circuit courts, and specifically the Western District of Washington, have greater recent experience adjudicating disputes involving claims of

copyright infringement for photographs on real estate marketplace websites—including cases

that involve the parties here—as discussed in detail in Section B.IV.7. *See VHT, Inc.*, 918 F.3d at

723; *see also CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, No. 2:20-CV-08819-CBM-AS

(C.D. Cal.).

This factor favors transfer.

### 9. Trial Efficiency and the Interests of Justice Favor Transfer

Southern District of New York courts have long recognized that, as one of the busiest

dockets in the country, comparative judicial congestion is entitled to weight in the transfer

analysis. *See, e.g.*, *Indian Harbor Ins. Co. v. Factory Mutual. Ins. Co.*, 419 F. Supp. 2d 395, 407

(S.D.N.Y. 2005) (ten-month faster time to trial in transferee district is "significant" and entitled

to weight); *Raines v. Switch Mfg. Corp.*, No. 96 CIV. 2361 (JFK), 1996 WL 413720, at *3

(S.D.N.Y. July 24, 1996) ("[T]he Southern District of New York is one of the busiest in the

nation. The interests of judicial economy demand that parties may bring suit here only by

showing a substantial connection between the cause of action and this district."); *Kanbar v. U.S.

Healthcare, Inc*., 715 F. Supp. 602, 606 (S.D.N.Y. 1989) ("To retain a case such as this which

has no substantial nexus to New York would only serve to further delay adjudication of other

cases brought by parties who are compelled to sue in the Southern District of New York.").

Courts in the Western District of Washington are significantly less congested than this

District. This Court currently has about 432 open cases. (Lanham Decl. ¶ 6.) Western District of

Washington judges have an average load of about 150 open cases, even when excluding from the

calculation three senior judges with smaller dockets. (*Id.*) Data from LexisNexis' LexMachina

legal analytics tool shows that the differences in congestion between the Southern District of

New York and Western District of Washington are stark, with a roughly 1,441-day time to trial

and roughly 696-day time to trial, respectively, for 2020 through 2025—more than a *two year*

difference. (*Id.*) Likewise, LexMachina data for 2020 through 2025 shows that cases in the Southern District of New York average 755 days to summary judgment filings and 216 days for resolution of summary judgment motions, while cases in the Western District of Washington average 482 days to summary judgment filings and 84 days for resolution of summary judgment motions. (*Id.*) The disparities between this District and the Western District of Washington are greater than the "significant" differences previously held to justify transfer. *See Indian Harbor*, 419 F. Supp. 2d at 407. Faster adjudication in the Western District of Washington will not only be more efficient, but also fairer to the parties. Zillow should not be forced to wait years on a heavier docket to clear its name. Keeping this action in this District would delay resolution, increase costs, and burden a Court already managing one of the heaviest caseloads in the country with a matter lacking any factual nexus to New York. Section 1404(a) was designed to prevent exactly this inefficiency.

Washington's predominant interest in this dispute further favors transfer in the interest of justice. Washington has a strong and direct interest in adjudicating this case because Zillow is a Washington corporation headquartered in Seattle, employing thousands of Washington residents. (Compl. ¶¶ 28–29; Rasmussen Decl. ¶ 3.) Washington courts have a compelling interest in regulating the conduct of corporations based within their borders, particularly where the claims involve core business operations directed from the state. *Benson v. Double Down Interactive, LLC*, 527 F. Supp. 3d 1267, 1273–75 (W.D. Wash. 2021) (Washington has a compelling interest in regulating the conduct of its resident businesses); *see also Smith v. Brit. Airways PLC*, No. C07-1370MJP, 2008 WL 11343651, at *3 (W.D. Wash. June 10, 2008) (noting New York's interest in class action was strong given defendant has a strong corporate presence there). By contrast, New York's connection to this dispute is minimal and through Zillow subsidiaries

StreetEasy and Out East, which, as discussed above, are peripheral to the claims at issue here.

This factor strongly favors transfer.

## V.    <u>CONCLUSION</u>

For these reasons, the Court should transfer this case to the United States District Court

for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

Dated: November 5, 2025                              Respectfully submitted,

MORRISON & FOERSTER LLP

By: /s/ *John R. Lanham*
     JOHN R. LANHAM*
     JLanham@mofo.com
     ERIC M. ACKER*
     EAcker@mofo.com
     BRIAN M. KRAMER*
     BMKramer@mofo.com
     12531 High Bluff Drive, Suite 200
     San Diego, CA  92130
     Telephone: (858) 720-5100
     Facsimile: (858) 720-5125

     Jamie A. Levitt, Bar No. 2548477
     JLevitt@mofo.com
     250 West 55th Street
     New York, NY  10019-9601
     Telephone: (212) 468-8000
     Facsimile: (212) 468-7900

     PAUL GOLDSTEIN*
     PGoldstein@mofo.com
     425 Market Street
     San Francisco, CA 94105
     Telephone: (415) 268-7000
     Facsimile: (415) 268-7522

     *Attorneys for Defendants*
     ZILLOW GROUP, INC. and ZILLOW, INC.

     *admitted pro hac vice*

## <u>WORD COUNT CERTIFICATE</u>

Pursuant to Local Rule 7.1(c), I certify that the foregoing memorandum of law contains 6,461 words.

/s/ *John R. Lanham*
John R. Lanham